**AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Petitioner, Appellant,**

v.

**Robert VANMAN, et al., Respondents.**

**No. C8–89–310.**

Supreme Court of Minnesota.

March 23, 1990.

James A. Stein, Lee A. Henderson, Hessian, McKasy & Soderberg, St. Paul, for appellant.

Randall G. Spence, Michael C. Snyder, Meshbesher, Singer & Spence, St. Paul, for respondents.

COYNE, Justice.

Reversing judgment in favor of American Family Mutual Insurance Company, the court of appeals held that a reparation obligor is not entitled to common law indemnity from an uninsured motorist for basic economic loss benefits paid pursuant to the assigned claims plan. *American Family Mut. Ins. Co. v. Vanman*, 442 N.W.2d 351, 354 (Minn.App.1989). We affirm.

On November 9, 1983, Marcella Sperl, a pedestrian, was struck by an uninsured automobile operated by Robert Vanman and owned by his sister Rebecca Vanman. Sperl, who was uninsured, procured basic economic loss benefits through the Minnesota Automobile Assigned Claims Bureau pursuant to Minn.Stat. § 65B.63 (1988). The bureau assigned the claim to American Family, which paid Sperl's medical expenses of $16,821.44 in full. In accordance with the assigned claims plan, American Family was reimbursed for its payments on Sperl's behalf, and the costs incurred with respect to Sperl's claim were allocated equitably among all reparation obligors providing basic economic loss insurance in Minnesota.

Minnesota Statute § 65B.67, subdivision 1 (1988), provides that the Minnesota No-Fault Automobile Insurance Act does not relieve the owner of an uninsured motor vehicle' of tort liability arising out of the operation, ownership, maintenance or use of the motor vehicle. Accordingly, had Sperl sued the Vanmans, she could have asserted, as a part of her cause of action, the claim for medical expenses. Sperl, however, declined to sue the Vanmans. American Family then commenced a suit on the theory that the Vanmans were liable to indemnify and reimburse American Family in the amount of $16,821.44, which represented American Family's subrogation interests for the medical expenses that it paid. The trial court ruled that American Family had no right of subrogation or indemnity under the No-Fault Act but that it did have a common law right of subrogation or indemnity with respect to payments required by the assigned claims plan. On appeal from judgment in favor of American Family, the court of appeals, by majority decision, reversed.

We have previously addressed the extent to which subrogation rights are recognized by the No-Fault Act. See *Milbrandt v. American Legion Post of Mora*, 372 N.W.2d 702, 705 (Minn.1985), and *Mohs v. Parrish's Bar*, 418 N.W.2d 494, 497 (Minn. 1988). Recognizing that a balance has been struck by the No-Fault Act between fault-based and no-fault systems for the compensation of accident victims, this court held in *Milbrandt* that against a liquor vendor section 65B.53, subd. 3, provides the exclusive subrogation remedy available to a reparation obligor which has paid economic loss benefits pursuant to a plan of reparation security. *Milbrandt*, 372 N.W.2d at 705. This rationale was later extended in another dram shop action to subrogation claims arising out of the payment of basic economic loss benefits pursuant to the assigned claims plan, Minn.Stat. § 65B.63, and we held that Minn.Stat. § 65B.64, subd. 2 (1988), limits the subrogation rights of a reparation obligor to which a claim has been assigned to those statutory subrogation rights held by no-

fault insurers generally. *Mohs*, 418 N.W.2d at 496–97. Because the statutory right of subrogation can be exercised only against a recipient of basic economic loss benefits, and then only to the extent that the recipient would otherwise realize a double recovery, and because the settlement between the liquor vendor and the injured party did not result in double recovery, the reparation obligor was entitled to subrogation in neither *Milbrandt* nor *Mohs.*

American Family would distinguish *Milbrandt* and *Mohs* by characterizing its claim as one for common law indemnity rather than subrogation. We are of the opinion, however, that indemnity does not lie under the facts of this case.

Minnesota Statute § 65B.64, subdivision 2 (1988), provides that the reparation obligor to whom a claim is assigned "shall be, as provided in section 65B.53, subrogated to all of the rights of the claimant against any person * * * for economic loss benefits provided by the obligor to whom the claim was assigned." Section 65B.53 (1988), however, permits a reparation obligor paying or obligated to pay basic economic loss benefits to seek reimbursement with respect to economic loss benefits arising out of negligence in the maintenance, use, or operation of a motor vehicle in only two situations. Section 65B.53, subdivision 1, creates a right of indemnity in a paying reparation obligor against a liability insurance carrier—not against the insured tortfeasor—if negligence in the operation, maintenance, or use of a commercial vehicle of more than 5,500 pounds curb weight was the proximate cause of the injury for which basic economic loss benefits were paid. That limited right of indemnity is enforceable only in arbitration. Minn.Stat. § 65B.53, subd. 4. Section 65B.53, subdivision 2, provides that a paying reparation obligor has a right of subrogation with respect to economic loss benefits arising out of negligence in the maintenance, use, or operation of a motor vehicle, but only if the negligence occurs in another state. Section 65B.53, subdivision 3, provides a right of subrogation with respect to claims based on intentional tort, strict or statutory liability, or negligence, but it expressly excludes negligent maintenance, use, or operation of a motor vehicle. The right of subrogation provided by subdivisions 2 and 3 exists only to the extent that the recipient of basic economic loss benefits would otherwise receive a double recovery. Section 65B.53 makes no provision for subrogation with respect to basic economic loss benefits paid on account of injuries resulting from the negligent maintenance, use, or operation of a non-commercial motor vehicle in this state.

In its entirety section 65B.53 provides a comprehensive plan which coordinates the ultimate responsibility for the payment of basic economic loss benefits in certain cases with other provisions of the No–Fault Act. *See* Minn.Stat. § 65B.47 (1988). The absence of provision for subrogation when injury results from the negligent maintenance, use, or operation of a non-commercial motor vehicle in this state is consistent with the provisions of section 65B.51 (1988) for the deduction from any recovery of the value of basic economic loss benefits paid or payable. That the failure to include in this comprehensive plan a right to seek indemnification from an uninsured tortfeasor whose negligent operation, maintenance, or use of a motor vehicle is the proximate cause of the injury for which basic economic loss benefits have been paid pursuant to the assigned claims plan creates a gap, perhaps unintentionally,[1] in the statutory subrogation construct does not justify judicial restructuring of the No–Fault Act.

■ Furthermore, the right of indemnity which American Family seeks does not fully comport with the common law right of indemnity. Technically, indemnity is more

---

**1.** Following issuance of the decision in *Mohs v. Parrish's Bar,* 418 N.W.2d 494 (Minn.1988), section 65B.64, subdivision 2, was amended to grant to the assigned claims bureau or any reparation obligor to whom a claim is assigned pursuant to the assigned claims plan the right to seek indemnification from an uninsured tortfeasor. Act of April 26, 1989, ch. 58, § 2, 1989 Minn.Laws 125.

limited in application than is subrogation, because not only must the indemnitee have conferred a benefit by the discharge of the indemnitor's duty or obligation, but the discharge must have occurred under circumstances in which the indemnitee was discharging an obligation coextensive with that of the indemnitor. There can hardly be any doubt that American Family's payment of Sperl's medical expenses did not fully discharge the Vanmans' obligation to Sperl.

Affirmed.